David H. Krieger, Esq.
Bar No. 9086
HAINES & KRIEGER, LLC
8985 S. Eastern Avenue, Suite 350
Henderson, Nevada 89123
Phone: (702) 880-5554 Fax: (702) 385-5518
Email: dkrieger@hainesandkrieger.com

Attorney for Plaintiff
KEVIN RIDEOUT

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| KEVIN RIDEOUT,<br><br>        Plaintiff,<br><br>v.<br><br>CASHCALL, INC.<br><br>        Defendant. | Case No.: 2:16-CV-02817-RFB-VCF<br><br>**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, MOTION FOR STAY AND TO COMPEL ARBITRATION** |

## MEMORANDUM OF POINTS AND AUTHORITIES

**I.      Introduction and Summary of Argument**

Defendant's Motion to Dismiss or to Compel Arbitration (the "Motion") is lacking in meritorious arguments and should be denied in its entirety. Put simply, at least two circuit courts have universally rejected enforcement of the ***identical arbitration provisions*** relied on by the same company (Western Sky Financial,

-1-

LLC), finding them to be unenforceable. Indeed, the Fourth Circuit called the identical arbitration provision in the Western Sky loan agreement a "farce" and "plainly forbidden." *Hayes v. Delbert Servs. Corp.*, 811 F.3d 666, 674-75 (4th Cir. 2016). Similarly, the Seventh Circuit found the forum selection clauses "a sham and an illusion," and rejected the enforceability of the choice-of-law clauses. *Jackson v. PayDay Fin., LLC*, 764 F.3d 765, 779 (7th Cir. 2014). This court should follow precedent and similarly find the arbitration provisions unenforceable.

Defendant's Motion should also fail for a number of other reasons, which will be more fully addressed below, in addition to the *stare decisis* effect of the two Circuit Court decisions. Specifically:

(1) The Western Sky Consumer Loan Agreement" (the "Agreement") is an adhesion contract created entirely by Western Sky; there was no meeting of the minds; the parties to the Agreement did not possess equal bargaining powers;

(2) Plaintiff did not sign or initial the Agreement; there is no evidence that he actually entered into the proffered "agreement", and there is no evidence that he ever saw, or had an opportunity to review the Agreement at issue (**ECF 6-1**);

(3) the typeface in the arbitration agreement is not prominent to alert the Plaintiff as to the rights he was forsaking; regardless, it is unconscionable to be forced to forsake the rights at issue;

(4) the Agreement is inadmissible hearsay which does not qualify under any exception to the hearsay rules.

Therefore, this case should proceed in this forum and be decided based upon the laws of the State of Nevada, relevant case law, and the Federal laws of the United States of America.

## II.     Factual Background

In August 2012, the Plaintiff allegedly obtained a high interest loan with an online company named Western Sky Financial, LLC ("Western Sky").  There is no evidence the Plaintiff ever signed, reviewed or consented to the proffered loan agreement.  (**ECF 6-1**).  After repaying the Debt, a representative at Defendant CASHCALL, INC. ("CASHCALL") informed Plaintiff that the Debt was paid in full and he owed no further obligations to CASHCALL.  (**ECF 1 ¶ 21**).  However, in September 2015 CASHCALL began calling the Plaintiff to collect payment on the non-existent Debt.  (**ECF 1 ¶ 22**). During the collection phone calls, CASHCALL informed Plaintiff that the Debt was in default and demanded payment.   (**ECF 1 ¶ 23**).  CASHCALL also called Plaintiff's wife and children regularly (sometimes multiple times per day on a daily basis) to collect the Debt.

(**ECF 1 ¶ 24,25**).

CASHCALL continued to call the Plaintiff, the Plaintiff's wife and children, despite Plaintiff disputing he owed any further payments on the Debt, informing CASHCALL that he repaid the Debt in full and requesting that the calls cease. (**ECF 1 ¶ 29**). CASHCALL disregarded Plaintiff's requests and continued to call Plaintiff on his cellular phone to collect the alleged Debt. (**ECF 1 ¶ 30**).

This lawsuit resulted. Based on the foregoing, this action arises from Defendant's violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* (the "TCPA"), violations of the Nevada Revised Statutes Chapter 604A.010 *et seq*. ("NRS 604A"), and the harassment of Plaintiff by the Defendant and its agents in their illegal efforts to collect a high-interest loan. (**ECF 1 ¶ 1, 2**). NRS 604A.415 incorporates the Fair Debt Collection Practices Act (FDCPA), as amended, 15 U.S.C. §§ 1692a to 1692j, which applies herein "even if the licensee is not otherwise subject to the provisions of the FDCPA." (**ECF 1 ¶ 6**).

### III. Circuit Courts Have Found The Identical Arbitration Provisions In Western Sky Loan Agreements to Be Unenforceable

At least two circuit courts have already found the ***identical provisions*** in Western Sky loan agreements to be unenforceable.

The Fourth Circuit called the arbitration provision in the Western Sky loan agreements a "farce" and "plainly forbidden." *Hayes v. Delbert Servs. Corp.*, 811 F.3d 666, 674-75 (4th Cir. 2016).

The Seventh Circuit found the forum selection clauses "a sham and an illusion," and rejected the enforceability of the choice-of-law clauses. *Jackson v. PayDay Fin., LLC*, 764 F.3d 765, 779 (7th Cir. 2014).  Nothing has changed in the (already determined) illegal agreement and this Court should now follow suit and reject Defendant's motion to compel arbitration, since its Agreement is plainly illegal as a matter of law.

### A. The Arbitration Provision Is *Identical* To Other Cases In Which Circuit Courts Found Them to be Unenforceable and a "Farce"

In *Hayes v. Delbert Servs. Corp.*, the Plaintiff received a payday loan from a lender called Western Sky Financial, LLC.   Defendant Delbert Services Corporation ("Delbert") later became the servicing agent for the loan.   Claiming that the Plaintiff agreed to arbitrate any disputes related to their loans, Delbert moved to compel arbitration under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 4. The district court granted Delbert's motion.  Finding that the arbitration agreement was *unenforceable*, the U.S. Court of Appeals reversed the district court's order compelling arbitration.  The Appellate court found the agreement attempted to fashion a system of alternative dispute resolution while simultaneously rendering that system impotent through a *categorical rejection of the requirements of state and federal law*. *Id.*  The Fourth Circuit held that the FAA does not protect the sort of arbitration agreement that unambiguously forbids an arbitrator from even applying the applicable law.   The court found the

-5-

arbitration agreement fails for the fundamental reason that it purports to renounce wholesale the application of any federal law to the plaintiff's federal claims. *Id.* The just and efficient system of arbitration intended by Congress when it passed the FAA *may not play host to this sort of farce*. *Id.*

The Fourth Circuit noted that while Western Sky was a tribal-owned entity, Delbert (the Defendant) is not. Accordingly, Delbert does not attempt to ground its renunciation of federal law in any claim of tribal affiliation. Similarly, CASHCALL is not a tribal entity. It has a mailing address (a P.O. Box) in Anaheim, CA for payments and a mailing address of 1600 S Douglas Rd, Anaheim, CA 92806 for Customer Service Inquiries. **ECF 6-1**. CASHCALL, LLC is also registered with the Nevada Secretary of State as a Nevada Corporation.[1]

In finding the arbitration clause unenforceable, the Fourth Circuit noted that the arbitration agreement almost surreptitiously waives a potential claimant's federal rights through the guise of a choice of law clause. That is the identical language to the instant case and therefore this court should find the arbitration clause at issue to be unenforceable.

---

[1] http://nvsos.gov/SOSEntitySearch/CorpDetails.aspx?lx8nvq=oXXOoEKe7ikr%252bBWzwB1VIA%253d%253d&nt7=0


However, notwithstanding its knowledge of these numerous Circuit level decisions rejecting the same arbitration language, CASHCALL now brazenly requests this Court compel arbitration based on patently illegal terms.

**B. The Agreement Creates a Sham Mechanism In Which Plaintiff Would Be Forced To Forego His Federally Protected Rights**

In *Hayes,* when finding the same arbitration agreement unenforceable, the Fourth Circuit found that instead of selecting the law of a certain jurisdiction to govern the agreement, as is normally done with a choice of law clause, this arbitration agreement uses its "choice of law" provision to waive all of a potential claimant's federal rights. *Id.* Significantly, CASHCALL relies upon identical language in the instant case.

The Court must reject CASHCALL 's request here, since the arbitration agreement sets up a hollow arbitral mechanism and is patently unenforceable. The Agreement provides that arbitration "shall be conducted by the Cheyenne River Sioux Tribal Nation by an authorized representative in accordance with its consumer dispute rules." Other courts reviewing Western Sky arbitration agreements identical to the one in this case have determined that, "although this contract language contemplates a process conducted under the watchful eye of a legitimate governing tribal body, a proceeding subject to such oversight simply is not a possibility." *Jackson v. Payday Financial, LLC*, 764 F.3d 765, 779 (7th Cir. 2014), cert. denied, 135 S. Ct. 1894, 191 L. Ed. 2d 763 (2015).

The Cheyenne River Sioux Tribal Nation (the "Tribe") has no authorized representatives who conduct arbitrations. *Id.* The Tribe does not even possess a method through which it might select and appoint such a person. *Id.*

Several federal courts have found that the rules alluded to by the agreement "do not exist." *Inetianbor v. CashCall, Inc.*, 768 F.3d 1346, 1354 (11th Cir. 2014), cert. denied, 135 S. Ct. 1735, 191 L. Ed. 2d 701 (2015).  The grave infirmities in the arbitral mechanism collectively render the arbitration agreement "a sham from stem to stern," and thus unenforceable. *Hayes v. Delbert Servs. Corp.*, supra.

While this Defendant – CASHCALL – is clearly aware of the multiplicity of cases rejecting the Agreement, shockingly, rather than deal with the merits of this matter, it has foisted cost and waste on this Court to determine the meritless Motion before the Court.

**C. CASHCALL Admitted The Arbitral Forum Is Not Available**

In other litigation involving a Western Sky arbitration agreement, CASHCALL, Inc., one of Western Sky's "allied" firms, and the *same Defendant* as the instant case, "acknowledged that the arbitral forum and associated procedural rules set forth in the plaintiff's loan agreement are not available." *Williams v. CashCall, Inc.*, 92 F. Supp. 3d 847, 851-52 (E.D. Wis. 2015), appeal docketed, No. 15-2699 (7th Cir. Aug. 12, 2015).  While the FAA gives parties the freedom to structure arbitration in the way they choose, it has repeatedly cautioned that this

freedom does not extend to a "substantive waiver of federally protected civil rights" in an arbitration agreement. *14 Penn Plaza LLC v. Pyett*, 556 U.S. 247, 129 S. Ct. 1456, 173 L. Ed. 2d 398 (2009).   No question the FAA does not extend here.

### D. The Arbitral Forum Was Found to be Corrupt

In at least one Western Sky dispute that made it to arbitration, the appointed arbitrator was a Mr. Chasing Hawk.  Mr. Chasing Hawk later admitted that ***Western Sky's owner*** had asked him to arbitrate the dispute. *Inetianbor v. CashCall, Inc.*, 962 F. Supp. 2d 1303, 1308 (S.D. Fla. 2013). Evidence in that litigation also suggested that Mr. Chasing Hawk's daughter worked for Western Sky.  *Hayes v. Delbert Servs. Corp.*, supra.

The problems stemming from the lack of a reputable arbitrator or arbitral appointment authority are compounded by the total absence of the "consumer dispute rules" contemplated by the arbitration agreement.

There is simply a tidal-wave of reasons to reject the Agreement and this Court should follow suit with the many others that preceded it allowing the Plaintiff to litigate the merits of this action in this forum.

### IV. The Agreement is Unsigned, Unreviewed and Inadmissible; and Cashcall Failed to Provide Any Evidence Plaintiff Reviewed or Consented To The Illegal Terms

The ten (10) page "Western Sky Consumer Loan Agreement" (the

"Agreement") attached to the Motion *does not contain the Plaintiff's signature, initials, or any indicia of the Plaintiff's review*.  See **ECF 6-1**.   There is no place *anywhere* in the ten pages that the Plaintiff assented to the proffered illegal Agreement.  There is no evidence whatsoever that Plaintiff was ever presented with the Agreement for his review or that he agreed to the illegal Agreements terms.

Even if this Court finds the Circuit courts unpersuasive and allows the illegal Agreement terms to be considered, the Court must still deny the Motion, since it is flatly unsupported by any admissible evidence to consider.

**A. It is an Adhesion Contract.  There Was No Assent to Arbitrate**

The Agreement is an adhesion contract.  It was allegedly entered into by the parties through an online website.  The Plaintiff resides in Nevada.  The "Governing Law" is stated to be the "Indian Commerce Clause of the Constitution of the United States of America and the laws of the Cheyenne River Sioux Tribe" *despite the fact* that Western Sky does "not have a presence in South Dakota or any other states of the United States."  See **ECF 6-1 p. 7.**

In the *same font size* as the rest of the agreement, Western Sky requires that a borrower waive their rights to a jury trial and agree to arbitrate all disputes by a representative of the Cheyenne River Sioux Tribal Nation.  See **ECF 6-1 p. 7.**  In fact, it states in a section entitled "Applicable Law and Judicial Review" "THIS ARBITRATION PROVISION IS MADE PURSUANT TO A TRANSACTION

INVOLVING THE INDIAN COMMERCE CLAUSE OF THE CONSTITUTION OF THE UNITED STATES OF AMERICA, AND SHALL BE GOVERNED BY THE LAW OF THE CHEYENNE RIVER SIOUX TRIBE. The arbitrator will apply the laws of the Cheyenne River Sioux Tribal Nation." See **ECF 6-1 p. 9.**

It is virtually impossible for a consumer/ borrower to ascertain what the "Law of the Cheyenne River Sioux Tribal Nation" means and what effect that "Law" would have on their rights. A borrower does not understand how their constitutional rights (including but not limited to due process) would be affected if they agreed to "arbitrate all disputes by a representative of the Cheyenne River Sioux Tribal Nation". It is unlikely that even a sophisticated consumer (i.e. an attorney) would fully understand and competently assent to terms of the Agreement.

### B. The Arbitration Provision Has Been Held To Be Invalid

Like other contractual provisions, forum selection clauses, even those designating arbitral fora, are not immune from the general principle that unconscionable contractual provisions are invalid. In *Jackson v. Payday Fin., LLC*, 764 F.3d 765 , 2014 U.S. App. LEXIS 16257 (7th Cir. Ill. 2014), the Seventh Circuit decided a case with an *identical fact pattern*. The choice of forum provision both in *Jackson* and in the instant case is procedurally and substantively unconscionable. An arbitration clause is procedurally unconscionable under Nevada law when a party lacks a meaningful opportunity to agree to the clause

terms either because of unequal bargaining power, as in an adhesion contract, or because the clause and its effects are not readily ascertainable upon a review of the contract. Substantive unconscionability focuses on the one-sidedness of the contract terms. Like the California Supreme Court, the Nevada Supreme Court applies a sliding scale in evaluating whether both procedural and substantive unconscionability invalidate an arbitration clause. Less evidence of substantive unconscionability is required in cases involving great procedural unconscionability. The reverse is also true. Less evidence of procedural unconscionability is required in cases involving great substantive unconscionability. *Zabelny v. CashCall, Inc.*, 2014 U.S. Dist. LEXIS 2626 (D. Nev. Jan. 7, 2014).

**C. The Arbitration Provision At Issue is Procedurally Unconscionable**

The *Jackson* court found that a contractual provision may be unconscionable on either procedural or substantive grounds. *Razor v. Hyundai Motor Am.*, 222 Ill. 2d 75, 854 N.E.2d 607, 622, 305 Ill. Dec. 15 (Ill. 2006). "Procedural unconscionability refers to a situation where a term is so difficult to find, read, or understand that the plaintiff cannot fairly be said to have been aware he was agreeing to it, and also takes into account a lack of bargaining power." Id. "Factors to be considered in determining whether an agreement is procedurally unconscionable include whether each party had the opportunity to understand the terms of the contract, whether important terms were hidden in a maze of fine print,

and all of the circumstances surrounding the formation of the contract." *Phoenix Ins. Co.*, 949 N.E.2d at 647. Regarding procedural unconscionability, the *Jackson* court found that the substantive commercial law of the Cheyenne River Sioux Tribe was not reasonably ascertainable with respect to tribal rules for conducting arbitrations. In fact, the record established that *such procedures do not exist*. The Tribe has neither a set of procedures for the selection of arbitrators nor one for the conduct of arbitral proceedings.

Consequently, it was not possible for the Plaintiff to ascertain the dispute resolution processes and rules to which he was agreeing.

### D. The Arbitration Provision At Issue is Substantively Unconscionable

Substantive unconscionability concerns the actual terms of the contract and examines the relative fairness of the obligations assumed. Indicative of substantive unconscionability are contract terms so one-sided as to oppress or unfairly surprise an innocent party, an overall imbalance in the obligations and rights imposed by the bargain, and significant cost-price disparity. *Kinkel v. Cingular Wireless LLC*, 223 Ill. 2d 1, 857 N.E.2d 250, 267, 306 Ill. Dec. 157 (Ill. 2006). With respect to substantive unconscionability, the dispute-resolution mechanism set forth in the loan agreements—"conducted by the Cheyenne River Sioux Tribal Nation by an authorized representative in accordance with its consumer dispute rules"—did not exist. The Jackson court found there simply was no prospect "of a meaningful and fairly conducted arbitration"; instead, this aspect

of the loan agreements "was a sham and an illusion."  The *Jackson* court found that enforcement of the forum selection clause contained in the loan agreements is unreasonable.

### E. There Was Unequal Bargaining Power Regarding The Choice of Law and Arbitration Provisions

A forum selection clause in a contract is prima facie valid and should be enforced unless the opposing party shows that enforcement would be unreasonable under the circumstances." IFC Credit Corp. v. Rieker Shoe Corp., 378 Ill. App. 3d 77, 881 N.E.2d 382, 389, 317 Ill. Dec. 214 (Ill. App. Ct. 2007).

This is true, however, only of "agreements reached through arm's-length negotiation between experienced and sophisticated business people"; "a forum selection clause contained in boilerplate language indicates unequal bargaining power, and the significance of the provision is greatly reduced." *Id.*  A key element that weighs against enforcement of the clause is that the clause was not the product of equal bargaining.   It imposes on unsophisticated consumers a nonexistent forum for resolution of disputes in a location that is remote and inconvenient.  *Id.*

The Eleventh Circuit refused to enforce the forum selection clause granting jurisdiction to the Cheyenne River Sioux Tribal Nation.  The court found that the clause was an integral part of the arbitration agreement.  It is clear that the parties here intended the forum selection clause to be a central part of the agreement to arbitrate, rather than an ancillary logistical provision.

The arbitration clause expressly provides "that any Dispute . . . will be resolved by Arbitration, which shall be conducted by the Cheyenne River Sioux Tribal Nation by an authorized representative in accordance with its consumer dispute rules and the terms of this Agreement. . . ." In total, the contract references the Tribe in five of its nine paragraphs regarding arbitration. That the designation of the particular forum *pervades the arbitration agreement* is strong evidence that at least Western Sky, *which drafted the contract*, and whose *majority shareholder is a member of the Tribe*, considered arbitration conducted by the Tribe to be an integral aspect of the arbitration agreement.

After finding the forum an integral part of the arbitration agreement, the Eleventh Circuit agreed with the district court that the forum was unavailable making the arbitration clause unenforceable.  *Brown v. Western Sky Fin., LLC,* 84 F. Supp. 3d 467 , 2015 U.S. Dist. LEXIS 11026 (M.D.N.C. 2015).

V. **The Western Sky Consumer Loan Agreement Is Inadmissible Hearsay**

Authentication is a "condition precedent to admissibility," and this condition is satisfied by "evidence sufficient to support a finding that the matter in question is what its proponent claims." Fed. R. Evid. 901(a). This Court has "repeatedly held that unauthenticated documents cannot be considered in a motion for summary judgment."  *Orr v. Bank of Am.*, 285 F.3d 764 *, 2002 U.S. App. LEXIS 7999.

-15-

The Agreement does not qualify under the business records exception to the hearsay rule. The Declaration (ECF 6-1 Exhibit A) fails to testify as to the business practices of Western Sky Financial, LLC.  The Declaration fails to testify as to the business practices of WS Funding (which allegedly bought the loan).  The Declaration also fails to testify as to the business practices of WS Funding which allegedly assigned the loan to CASHCALL for servicing and handling.

Specifically, for an out of course business records (like the Agreement) to be admissible, FRE Rule 803 states and requires:

> **(6)** *Records of a Regularly Conducted Activity*.
>
> A record of an act, event, condition, opinion, or diagnosis if:
> **(A)** the record was made at or near the time by — or from information transmitted by — someone with knowledge;
> **(B)** the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;
> **(C)** making the record was a regular practice of that activity;
> **(D)** all these conditions are shown by the testimony of the custodian or another qualified witness...

Here, CASHCALL has effectively failed to comply with every required element under FRE 803(6) and the Agreement is inadmissible.  Specifically, Defendant's witness (an officer at CASHCALL) offered no personal knowledge about the truthfulness of the information contained within the Agreement or how that information was obtained.  Defendant's witness did not testify as to the procedures of how the Agreement was created online or maintained thereafter (or indeed, created at all).  He did not testify as to how the information was presented

to the Plaintiff or stored throughout the chain of title from Western Sky Financial, LLC to WS Funding and then to CASHCALL.  He merely provided self-serving testimony as to what the document purported to be.

Therefore, the Agreement does not fall within the business records exception to the hearsay rules and should be deemed inadmissible hearsay, since not even one of FRE 803(6)'s elements was met; and the Agreement should be excluded as inadmissible hearsay.

## VI. Conclusion

For the foregoing reasons, Plaintiff, KEVIN RIDEOUT, respectfully requests that this Court deny Defendant's Motion to Dismiss or, in the Alternative, Motion for Stay and to Compel Arbitration.

DATED February 8, 2017.

                                                        HAINES & KRIEGER, L.L.C.

                                                       By: /s/ David H. Krieger, Esq.
                                                              David H. Krieger, Esq.
                                                              Nevada Bar No. 9086

                                                              Attorney for Plaintiff
                                                              KEVIN RIDEOUT